FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2015 SEP 28 PM 11 28

STEPHAN HARRIS, CLERK
CHEYENNE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| J.C. ENERGY, LLC, a Wyoming limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES SCOTT HALL, an individual, and PETRO ENERGIES, INC., a Colorado corporation,<br><br>Defendants. | Case No. 14–CV–236–ABJ |

---

## OPINION AND ORDER GRANTING IN PART, DENYING IN PART J.C. ENERGY'S MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND
## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

The Plaintiff's *Motion for Partial Summary Judgment* (Doc. No. 19) and Defendants' opposition (Doc. No. 24); Defendants' *Motion for Summary Judgment* (Doc. No. 22), the Plaintiff's opposition (Doc. No. 25), and Defendants' reply (Doc. No. 27) came for hearing September 22, 2015. After reviewing the parties' submissions, the arguments of counsel at the hearing, the applicable law, and being fully advised, the Court finds that Plaintiff's *Motion for Partial Summary Judgment* (Doc. No. 19) should be **GRANTED IN PART and DENIED IN PART**, and that Defendants' *Motion for Summary Judgment* (Doc. No. 22) should be **DENIED** for the reasons stated at hearing and below.

## BACKGROUND

*Leading up to the Agreement in Question*

In 2012, John Mills, Caleb Kinsella, and Kenneth Mills formed J.C. Energy, LLC (Plaintiff) in Laramie, Wyoming. J.C. Energy specializes in technical and proprietary consulting and servicing for oil and gas companies, which includes weld mapping. Weld mapping—in the most general sense—is the outlining of an oil and gas project. J.C. Energy began performing this type of work for its only customer at the time, Anadarko Petroleum Corporation, in 2012. Initially, J.C. Energy worked for Anadarko in Wyoming and Utah, expanding later to northern Colorado.

In the fall of 2013, J.C. Energy was looking for an inspector: someone to monitor quality control, perform weld mapping, and enter daily logs and reports. On November 7, 2013, J.C. Energy hired Charles Scott Hall (Defendant) to be an inspector. Hall had some experience in oil and gas work, but little knowledge of what he would be doing as an inspector for J.C. Energy. Hall possessed a background in construction, maintenance roustabout services, and gas plant operations. J.C. Energy trained Hall in its business operations and techniques, which included substantial training in weld mapping. According to J.C. Energy, it explained to Hall how Anadarko preferred its weld mapping.[1] Hall had the opportunity to learn the intricacies of J.C. Energy's business relationship with Anadarko and about J.C. Energy's future work and prospective customers.

At some point, the owners of J.C. Energy realized that they should have their employees sign agreements with the company to protect business interests, particularly in the area around

---

[1] There is some dispute as to whether Anadarko or J.C. Energy taught the Defendant about the weld mapping procedures used on these projects.

southeastern Wyoming and northern Colorado. The Defendants contend that J.C. Energy only required these agreements in response to some company turmoil at J.C. Energy, which John Mills caused. In December of 2013, John Mills tested positive for marijuana, causing Anadarko to remove him from all of their work in northern Colorado. Anadarko allowed Caleb Kinsella to continue J.C. Energy's work in northern Colorado. Three employees became worried about the company's future viability and quit. Mills presented the agreement to the remaining employees, one of whom was Hall.

On January 25, 2014, J.C. Energy met with Hall at a company meeting in Cheyenne, Wyoming. Almost a week prior to the meeting, J.C. Energy presented Hall with the employment agreement in question: "Employee Confidentiality, Non-Compete, and Non-Disclosure Agreement" ("Agreement"). In exchange for $1000.00 in consideration, Hall agreed to all the provisions therein.[2]

*The Agreement*

The Agreement begins by explaining the importance of the business information to J.C. Energy, why the company entered into the agreement, and what the consideration would be. After the introductory portion, the Agreement addresses Hall's obligation of non-disclosure. The Agreement defines "Information" as "proprietary, confidential and or trade secret Information (including data, techniques and materials, tangible and intangible, customer lists, contacts, industry data, and general know-how), which properly belong to the Company." Doc. No. 20-4, p. 1. After this definition, the Agreement discusses Hall's obligations with regard to non-disclosure of the Information.

---

[2] Hall admits to taking the $1000.00 in consideration, but he also claimed during his deposition that he believed he would be fired if he did not sign it.

3

> 1. . . . (c) During the term of the Employee's service with Company and after termination of such employment, unless authorized in writing by Company, Employee will not:
>> (i) Use for Employee's benefit or advantage the Information; or
>> (ii) Use the Information for the benefit or advantage of any third party; or
>> (iii) Improperly disclose or cause to be disclosed the Information or authorize or permit such disclosure of the Information to any third party; or
>> (iv) Deliberately or with negligence, use the Information in any manner which may injure or cause loss to the Company directly or indirectly.
>
> (d) Employee will not be liable for the disclosure of Information which:
>> (i) Is in the public domain; or
>> (ii) Is received rightfully by Employee from a third party having a lawful right to possess; or
>> (iii) [is ordered by a court and takes reasonable steps to protect the information]; or ....

Doc. No. 20-4, pp. 1–2. After the non-disclosure section, the Agreement addresses ownership of intellectual property, which is not at issue in this case. The Agreement next addresses concerns with prior obligations of employees, before explaining Hall's covenant not to compete.

The covenant not to compete reads as follows.

> 4. . . . (a) During the Employee's employment with the Company, and for a period of two (2) years thereafter, the Employee shall not directly or indirectly:
>> (i) Enter into or attempt to enter into an agreement of employment or otherwise undertake to provide services to any person or entity in similar to those services of the Company within a one-hundred mile (100) radius of Cheyenne, Wyoming;
>> (ii) Induce or attempt to persuade any former, current or future employee, agent, manager, consultant, director, or other participant in the Company's business to terminate such employment or other relationship in order to enter into any relationship with the Employee, any business or organization in which the Employee is a participant in any capacity whatsoever, or any other business organization in competition with the Company's business; or
>> (iii) Use contracts, proprietary information, trade secrets, confidential information, customer lists, exclusive suppliers, trade dress, trade names, trademarks, patents, mailing lists, marketing materials, goodwill, or other intangible property used or useful in connection with the Company's business.

4

Doc. No. 20-4, p. 4. The Agreement provides that these terms survive termination of the employee's employment. The Agreement specifies that Hall was fully aware of his right to discuss all aspects of the Agreement with an attorney of his choice. The Agreement states that it "shall be interpreted and enforced pursuant to the laws of the State of Wyoming." Doc. No. 20-4, p. 5. The Agreement goes on to read "[i]n the event . . . suit or action is brought by any party under this Agreement to enforce any of its terms, it is agreed that the prevailing party shall be entitled to reasonable attorneys['] fees." *Id.* Both parties signed the agreement, and J.C. Energy paid Hall his $1000.00.

*After the Agreement*

During Hall's employment with J.C. Energy, Hall formed his own company to perform the exact same work as J.C. Energy provided. On June 26, 2014, Hall formed Petro Energies, Inc., a Colorado corporation.[3] Petro Energies' principal place of business was and is in Johnstown, Colorado.[4] After setting up his corporation, Hall and Anadarko began a business relationship. On July 24, 2014, Hall entered into a service agreement with Anadarko to perform substantially similar work to what he previously did on behalf of J.C. Energy for Anadarko. Hall and Anadarko specifically negotiated services at locations where Hall had performed work for J.C. Energy. On August 21, 2014, Hall gave J.C. Energy his notice, terminating his employment with J.C. Energy.

On August 22, 2014, Hall began performing under his contract with Anadarko through Petro Energies. On September 8, 2014, J.C. Energy sent the Defendants a demand letter

---

[3] Hall is the sole principal of Petro Energies.

[4] The Defendants do not dispute that all of the activities performed for Anadarko by Petro Energies were within the 100 mile limit of the covenant not to compete.

threatening suit if Hall kept violating the Agreement, which it filed on November 11, 2014. Around the beginning of June of 2015, Anadarko completely severed its relationship with J.C. Energy.[5] As of June 29, 2015, Petro Energies billed and collected more than $475,000.00 from Anadarko.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn" in the non-movant's favor. *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials

---

[5] The parties dispute whether Anadarko severed the relationship with J.C. Energy because of low oil prices or the Plaintiff's lawsuit against the Defendants.

in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255.

## DISCUSSION

### I. The facts and circumstances of this case require the Court to apply Wyoming law.

Plaintiff contends that the choice of law provision in the contract governs. Even if it does not govern, Plaintiff contends that choice of law doctrine still requires the case to be decided under Wyoming law. Defendants contend that the contractual choice of law is invalid, because the application of Wyoming law would be contrary to the fundamental policy of Colorado and, given Petro Energies' Colorado roots, Colorado has a materially greater interest than Wyoming.

Federal courts sitting in diversity cases must engage in a two-step inquiry. *Boyd Rosene and Associates, Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999). First,

the Court must determine whether the particular matter is procedural or substantive. *Id.* Second, the Court must look to the substantive law of the forum state—including its law on choice of law principles—to determine the substantive law governing the case. *Id.* Here, the matter is substantive, because the parties are testing the merits of the Plaintiff's causes of action (two specific breaches of contract, breach of good faith and fair dealing, contractual claim for attorneys' fees by both sides, and the contractual law underlying the permanent injunction). Because each cause of action is contractual in nature, contractual choice of law doctrine applies to each count.

For contract actions, Wyoming adopted and follows Section 187 of the Restatement Second of Conflict of Laws. *Resource Technology Corp. v. Fisher Scientific Co.*, 924 P.2d 972, 975 (Wyo. 1996).

> The Restatement (Second) of Conflict of Laws sets forth the following rule for applying choice of law agreements:
>
> > (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
> >
> > (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
> > > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> > >
> > > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue....
>
> Restatement (Second) of Conflict of Laws § 187 (1971 & Supp.1989). This Court stated in *Smithco Engineering, Inc. v. International Fabricators, Inc.*, 775 P.2d

8

1011, 1018 (Wyo.1989), that we will not apply foreign law when it is contrary to the law, public policy, or the general interests of Wyoming's citizens.

*Id.* The Court starts with the law chosen within the contract, but exceptions exist to invalidate a choice of law agreement between parties.

The Court will apply Wyoming law. The parties agreed to the application of Wyoming law in the contract. The Defendants do not present an applicable exception. First, Wyoming has a substantial relation to the parties and the transaction: the parties chose Wyoming law; the parties signed the contract in Wyoming; and the company protecting its interest is in Wyoming. The exception under subsection (a) is not met. Second, the application of Wyoming law is not contrary to the fundamental policy of a state with a materially greater interest than Wyoming. Given the location of the contract signing, contractual choice, and company location, Wyoming clearly has the greatest interest in the outcome of this case. Colorado does not have an equal interest to—much less a materially greater interest than—Wyoming. Hall and Petro Energies are in Colorado now and the work is performed in Colorado. Those connections are not enough to outweigh materially Wyoming's connection. No exception is met, and Wyoming law must be applied.

## II. Using Wyoming law, Plaintiffs are entitled to partial summary judgment in part.

### a. The Plaintiff met its burden in showing that no dispute exists as to the existence of an agreement.

The existence of a contract and its terms are generally questions of fact to be resolved by the fact finder. *Birt v. Wells Fargo Home Mortgage, Inc.*, 2003 WY 102, ¶ 10, 75 P.3d 640, 647 (Wyo. 2003). However, a movant can still show that a contract was formed without dispute. A binding contract is created after an offer, acceptance, and exchange of consideration. *Id.* The Plaintiff met its burden in showing that a contract exists between J.C. Energy and Hall.

There is no dispute as to the existence of an offer, because Hall admitted at deposition that he received the Agreement from J.C. Energy via email and was verbally informed of the offer. Doc. No. 20-3, pp. 12–13. No dispute exists as to acceptance. Hall stated that he signed the document after reading it. Doc. No. 20-3, p. 13; *see also* Doc. No. 26, p. 1. (Hall admitting to signing the contract). No dispute exists as to an exchange of consideration. The Agreement contains promises made by J.C. Energy and Hall. The Agreement binds Hall not to disclose particular information, and not to compete. Doc. No. 20-4, pp. 1–4. The Agreement binds J.C. Energy to pay Hall $1000.00. Doc. No. 20-4, p. 1. Hall admitted to receiving the $1000.00 in exchange for his promise of performance. Doc. No. 20-3, p. 13. There is no dispute that offer, acceptance, and consideration were present. As a matter of law, J.C. Energy and Hall had a valid contract.

### b. A dispute of material fact exists as to the terms of the non-disclosure, but not to the terms of the covenant not to compete.

Plaintiff argues that the court can interpret the contract as a matter of law when no genuine issues of material fact exist, and the provisions of the contract are unambiguous citing *Treemont, Incorporated v. Holly.* 886 P.2d 589 (Wyo. 1994). Plaintiff provided the contract with its motion, and portions of the contract are unambiguous. *See* Doc. No. 20-4. Hall unambiguously owes J.C. Energy a general duty not to disclose. However, the terms used to describe "Information" are ambiguous. Doc. No. 20-4, p. 1. Plaintiff is not entitled to summary judgment on the terms of the non-disclosure agreement.

On the other count of breach of contract, Hall unambiguously owes J.C. Energy the duty not to compete. Doc. No. 20-4, p. 4. This language is very clear. By presenting the agreement, Plaintiff has met its burden in showing no dispute as to the language of the non-compete.

Defendants do not provide evidence to the contrary in Hall's deposition or any other supporting evidence. The Defendants do not dispute the language of the non-compete portion of the agreement. They dispute whether the agreement is reasonable as a matter of law. For these reasons, Plaintiff is entitled to summary judgment on the unambiguous language of the covenant not to compete.

### c. A dispute of material fact exists as to whether Hall breached his obligation of non-disclosure.

Plaintiff asserts that no dispute exists as to its claim for Hall's breach of the non-disclosure agreement. Breach of contract involves three elements.

> The elements for a breach of contract claim consist of a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages.

*Reynolds v. Tice*, 595 P.2d 1318, 1323 (Wyo.1979). As to the issue of non-disclosure, there is a lawfully enforceable contract, as discussed above. The Plaintiff does not meet its burden under the second element. There is a dispute as to whether Hall failed to perform all or part of what he promised and whether that action or inaction was justified. Plaintiff put forth testimonial and documentary evidence of the failure to timely perform. However, Defendants rebut that showing through Hall's deposition, which indicates that there might have been disclosure of information, but it was already public or already owned by Anadarko. Doc. No. 20-3, p. 7. In addition, the contract is ambiguous as to what "Information" is covered by the non-disclosure agreement. Doc. No. 20-4, p. 1. The Court cannot determine the terms and a breach thereof without factual evidence presented at bench trial.

### d. The covenant not to compete is reasonable as a matter of law, except as to duration, which the court will revisit at trial. In addition, no dispute exists as to whether Hall breached the covenant.

In 1993, the Wyoming Supreme Court thoroughly detailed the law on covenants not to compete. *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 539–40 (Wyo. 1993). J.C. Energy must prove that the covenant is in writing, part of a contract of employment, based on reasonable consideration, reasonable in durational and geographical limitations, and not against public policy. *Id.* The reasonableness of the covenant to compete is a factual and circumstantial determination. *Id.* Although it is a factual and circumstantial determination, it is one that is a question of law to be determined by the court. *Oliver v. Quinn*, 2013 WY 70, ¶ 15, 303 P.3d 1119, 1125 (Wyo. 2013). The Court must make the determination of reasonableness. The *Hopper* Court gave caution when trying to compare the facts of one case to the facts of another.

> [W]e find precedent from our own or from other jurisdictions to be of limited value in considering the reasonableness of various covenants not to compete from different authorities. . . . We believe the reasonableness of individual limitations contained in a specific covenant not to compete must be assessed based upon the facts of that proceeding.

*Hopper*, 861 P.2d at 543. This makes the analysis discretionary for the Court.

Here, the covenant is in writing and part of a contract for employment. Next, the Court must analyze whether $1000.00 is reasonable consideration. The *Hopper* Court explained that Wyoming law required separate consideration beyond continuing employment and gave the reasoning behind its decision. *See Id.* at 541 (stating that public policy supports separate consideration). The *Hopper* Court listed promotion, pay raise, special training, employment

benefits or other advantages for the employee.[6] The list is non-exclusive given the usage of "other advantages for the employee." *Id.* The Court finds this consideration reasonable. Hall admitted that he received $1,000.00 in exchange for signing this agreement. The $1,000.00 bonus was reasonable considering Hall had only been employed for a couple months; he was still in training; and he could use his other prior experience to find oil and gas work in the area.

The Court must next analyze whether the geographical and durational limits were reasonable. The location is within a 100 mile radius of Cheyenne, Wyoming, and the duration is two years after employment. The *Hopper* opinion first discusses the geographical limit.

> Reasonable geographic restraints are generally limited to the area in which the former employee actually worked or from which clients were drawn. *Commercial Bankers Life Ins. Co. of America*, 516 N.E.2d at 114-15; *Brewer v. Tracy*, 198 Neb. 503, 253 N.W.2d 319, 322 (1977). When the business serves a limited geographic area, as opposed to statewide or nationwide, courts have upheld geographic limits which are coextensive with the area in which the employer conducts business. *Torrence v. Hewitt Associates*, 143 Ill.App.3d 520, 97 Ill.Dec. 592, 596, 493 N.E.2d 74, 78 (1986). A broad geographic restriction may be reasonable when it is coupled with a specific activity restriction within an industry or business which has an inherently limited client base. *System Concepts, Inc. v. Dixon*, 669 P.2d 421, 427 (Utah 1983).

*Hopper*, 861 P.2d at 544. The evidence in the record shows that J.C. Energy does business within this 100 mile radius and beyond. Doc. Nos. 20-1, 20-2, 20-3, 20-6. Northern Colorado is one of J.C. Energy's areas, and the radius restricts competition there. Doc. Nos. 20-1, 20-2, 20-3, 20-6. Hall could have gone to Utah and directly competed against J.C. Energy, but instead stayed within the non-compete radius and competed with J.C. Energy. Given the nature of the oil and gas business, it was more than reasonable for J.C. Energy to place this restriction on Hall. The 100 mile radius is reasonable.

---

[6] In that case, Dr. Hopper, a veterinarian received a $550.00 per month pay raise, which the Court found to be sufficient consideration.

The *Hopper* Court next addressed the reasonableness of a durational limitation.

A durational limitation should be reasonably related to the legitimate interest which the employer is seeking to protect. Restatement (Second) of Contracts, supra, § 188 cmt. b.

> In determining whether a restraint extends for a longer period of time than necessary to protect the employer, the court must determine how much time is needed for the risk of injury to be reasonably moderated. When the restraint is for the purpose of protecting customer relationships, its duration is reasonable only if it is no longer than necessary for the employer to put a new [individual] on the job and for the new employee to have a reasonable opportunity to demonstrate his [or her] effectiveness to the customers. If a restraint on this ground is justifiable at all, it seems that a period of several months would usually be reasonable. If the selling or servicing relationship is relatively complex, a longer period may be called for. Courts seldom criticize restraints of six months or a year on the grounds of duration as such, and even longer restraints are often enforced.

Blake, 73 Harv.L.Rev. at 677 (footnote omitted). See Amex Distributing Co., Inc. v. Mascari, 150 Ariz. 510, 724 P.2d 596, 604-05 (1986) (quoting Blake and applying rule in determining that a three year duration of a covenant not to compete was unreasonable).

*Id.* at 544-45. If the Court finds a particular duration unreasonable it can tailor the duration to be reasonable. *See id.* at 545 (modifying the three year covenant not to compete downward to one year, focusing on the time it would take to replace the previous veterinarian and train a new one). The Plaintiff did not show that two years is a reasonable duration, because the court does not currently have enough information before it on the issue. This matter of law prevails for the bench trial. The two year period could very well be reasonable to protect J.C. Energy's business interests given Hall's special influence over Anadarko. But the record does not contain enough evidence on this issue for the Court to rule at this point. One year or six months may be a reasonable duration. At this point, the Court cannot determine such.

The covenant not to compete is reasonable as a matter of law in all aspects, except duration. Next, the Court must address whether there is a dispute as to a breach of the covenant

not to compete. There is not. Plaintiff provided admissions and depositions showing that Hall engaged in the same business in the same locations with Anadarko, even during his continued employment with J.C. Energy. Doc. Nos. 20-1, 20-2, 20-3, 20-6. First, Hall breached Section 4(a)(i).

> "During [Hall's] employment with [J.C. Energy], and for a period of two (2) years thereafter, [Hall] shall not directly or indirectly: enter into . . . an agreement of employment or otherwise undertake to provide services to any . . . entity in similar to those services of [J.C. Energy] within a 100 mile radius of Cheyenne, Wyoming."

Doc. No. 20-4, p. 4. Hall admitted to breaching this agreement when he formed and worked for Petro Energies, which performed identical services within 100 miles of Cheyenne, Wyoming, and did so during and directly after his employment. Doc. Nos. 20-3, 20-6.

Second, whether Hall breached Section 4(a)(ii) is not in dispute.

> "During [Hall's] employment with [J.C. Energy], and for a period of two (2) years thereafter, [Hall] shall not directly or indirectly: ... induce or attempt to persuade any former, current or future . . . or other participant in [J.C. Energy's] business to terminate such . . . other relationship in order to enter into any relationship with [Hall], any business organization in which [Hall] is a participant in any capacity whatsoever, or any other business organization in competition with [J.C. Energy's] business."

Doc. No. 20-4, p. 4. Hall admitted in his deposition and admissions that he started working for Anadarko—through Petro Energies—doing the same thing J.C. Energy did, in the same locations. Doc. Nos. 20-3, 20-6. This is the second undisputed breach of the non-compete portion of the contract. Plaintiff is entitled to summary judgment on these breaches. The Court notes that causation and damages are still issues for bench trial. Disputed facts exist as to whether Hall caused J.C. Energy damages and, if so, in what amount. Doc. Nos. 20-1, 20-2, 20-3.

e. **A dispute of material fact exists as to whether Hall breached his duty of good faith and fair dealing.**[7]

The contractual duty of good faith and fair dealing is recognized in Wyoming. *See Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶¶ 84–85, 226 P.3d 889, 919–20 (Wyo. 2010). The Defendants' admissions and Hall's deposition establish that the duty of good faith and fair dealing may have been breached. Doc. Nos. 20-3, 20-6. However, Hall did testify during his deposition that he did not understand the contract. Doc. No. 20-3. This testimony creates a dispute of material fact.

III. **Under Wyoming law, Defendants are not entitled to judgment as a matter of law on any count.**

a. **A dispute of material fact exists as to whether Hall breached his obligation of non-disclosure.**

Defendants did not meet their burden to show that no dispute exists as to whether Hall breached the non-disclosure provisions. Hall contends that the weld mapping and other information was Anadarko's information, but without any testimony from Anadarko the contention is somewhat empty. Hall's deposition does indicate that a breach might not have occurred, but John Mills disputed this in his deposition. Doc. Nos. 20-3, 20-1. A disputed issue of material fact remains for bench trial.

---

[7] At the hearing, Plaintiff's counsel admitted that this cause of action was not in tort, only in contract. The Court notes that this count is duplicative of the contract damages for purpose of trial.

**b. As discussed above, the covenant not to compete was reasonable, and Hall breached the covenant.**

The covenant not to compete is reasonable as a matter of law, except as to the Court's determination of duration. In addition, Hall admits to breaching the covenant not to compete, creating no dispute of material fact on the issue of breach in the Plaintiff's favor. Defendants are not entitled to summary judgment on this issue.

**c. A dispute of material fact exists as to whether Hall breached his duty of good faith and fair dealing.**

Hall claims he did not understand the contract, especially the covenant not to compete. Doc. No. 20-3. He even states he heard it would not survive in a court of law. Doc. No. 20-3. This evidence indicates that he may have been acting in good faith when he breached the non-compete provision. On the other hand, the Agreement speaks for itself. Doc. No. 20-4. The language makes very clear what Hall can and cannot do. As quoted above, "although we recognized that resolution of a bad faith claim will generally involve a factual inquiry, a party is entitled to a judgment as a matter of law 'if, under the facts in the record, the party's actions alleged as a basis for the breach of the implied covenant were in conformity with the clear language of the contract.'" *Ultra Resources, Inc.*, ¶ 85 (citations omitted). Hall did not claim to be following the language of the contract. Doc. No. 20-3. His breach was directly against the clear language of the contract. For that reason, a fact finder could find his actions to be in bad faith and against his duty of good faith and fair dealing.

### d. A dispute of material fact exists as to whether the Defendants are entitled to attorneys' fees.

The Defendants requested summary judgment on the issue of attorneys' fees based on the condition that they prevailed on summary judgment. The Court cannot rule on attorneys' fees at this time, because the term "prevailing party" cannot be determined until the end of this case. It is still ambiguous which party will be considered the "prevailing party" for purposes of awarding attorneys' fees under the agreement.

### e. A dispute of material fact exists as to whether J.C. Energy is entitled to a permanent injunction.

The Defendants assert that they are entitled to summary judgment on the issue of the permanent injunction because the issue is moot. They claim the issue is moot because J.C. Energy does not provide services in northern Colorado anymore, and J.C. Energy does not have a relationship with Anadarko. A permanent injunction could still be ordered to enforce the remaining time of the Agreement, depending on its duration. The Agreement is supposed to last "2 years [after]" employment ends, which could be tailored to a shorter period by the Court. Hall ended his employment on August 21, 2014, so he could be enjoined from this 100 mile radius until August 21, 2016. This issue will be determined at bench trial.

## CONCLUSION

The Plaintiff is entitled to a determination that (1) Wyoming is the proper choice of law; (2) a contractual agreement exists between the parties; (3) the terms of the covenant not to compete are unambiguous; (4) the terms of the covenant not to compete are reasonable, except duration; and (5) Hall breached his duty not to compete. The Defendants are entitled to judgment as a matter of law on one allegation of the *Complaint* dealing with the duty not to compete.

Plaintiff's counsel agreed to dismiss the claim against the Defendants in Paragraph 48 of the *Complaint* concerning "attempting to solicit certain employees of J.C. Energy . . . ." The Court will dismiss that portion of the cause of action.

The issues remaining for trial are: (i) the ambiguous terms of the non-disclosure agreement; (ii) whether Hall breached those terms; (iii) what duration is reasonable for the covenant not to compete; (iv) whether Hall breached the covenant of good faith and fair dealing; (iv) causation; and (v) damages. For the foregoing reasons, as well as those stated from the bench orally at the hearing, as reflected more fully in the transcript of the hearing, it is hereby

**ORDERED** that the Plaintiff's *Motion for Partial Summary Judgment* (Doc. No. 19) shall be, and is, **GRANTED in part, DENIED in part. It is further**

**ORDERED** that the Defendants' *Motion for Summary Judgment* (Doc. No. 22) shall be, and is, **DENIED. It is further**

**ORDERED** that the Plaintiff's claim for breach of the covenant not to compete concerning Hall's alleged solicitation of J.C. Energy employees discussed in Paragraph 48 of the *Complaint* is **DISMISSED** by stipulation of the parties.

The parties shall be prepared to proceed to trial as presently scheduled for October 26, 2015.

Dated this 25th day of September, 2015.

Alan B. Johnson
United States District Judge